UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| RYDER SEVAJIAN, | |
| Plaintiff, | Civil Action No. 20-cv-1591 (JXN)(ESK) |
| v. | OPINION |
| ERIK O. CASTRO, MICHAEL KELLY, and CITY OF JERSEY CITY, | |
| Defendants. | |

**NEALS**, District Judge:

This matter comes before the Court on the Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC") [ECF No. 31] filed by Defendants City of Jersey City ("Jersey City") and Police Chief of Jersey City Police Department, Michael Kelly ("Officer Kelly") (collectively, "Defendants"), to which Plaintiff Ryder Sevajian ("Plaintiff") filed opposition [ECF No. 38], to which Defendants replied [ECF No. 39]. Jurisdiction is proper pursuant to 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391(b). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1(b). For the reasons stated herein, Defendants' Motion to Dismiss [ECF No. 31] is **GRANTED in part and DENIED in part**.

I.   FACTUAL BACKGROUND

This matter arises out of an incident in which off-duty Jersey City Police Officer Erik Castro ("Officer Castro") was involved in a physical altercation with Plaintiff in Hoboken, New Jersey. Plaintiff alleges that he was involved in a verbal dispute with a group of people when Defendant Castro intervened and "violently assaulted" him. SAC ¶¶ 10-11, 13. As a result of the

encounter with Defendant Castro, Plaintiff reports that he suffered a "comminated fracture of the right orbital floor and maxillary sinus wall; subarachnoid hemorrhages with post-concussion syndrome including headaches, cognitive disfunction and loss of taste and smell." *Id.* ¶ 13. In response, Officer Castro was arrested and charged with aggravated assault. *Id*. ¶ 14. Following an indictment by a Hudson County grand jury, Officer Castro pled guilty to a lesser charge. *Id.* ¶ 15.

Nearly one year and a half following the incident, Plaintiff commenced this suit against Jersey City, Officer Castro, and Officer Kelly. In the SAC, Plaintiff asserts four causes of action for (1) assault and battery; (2) negligent hiring; (3) failure to train and supervise; and (4) unconstitutional policy. *See generally* SAC. Plaintiff alleges that Defendants negligently hired Officer Castro and failed to train, supervise, and discipline police officer for misconduct, which directly caused Officer Castro to assault Plaintiff in violation of his constitutional rights. *Id.* ¶¶ 30-39. In support of his claims, Plaintiff points to the "Professional Standards Summary Report Forms" which provide the following:

> from 2013 to 2019 the [Internal Affairs Unit] received 206 excessive force complaints, 51 improper arrest complaints and forty-nine (49) differential treatment complaints. Only two (2) excessive force complaints were sustained (less than 1%) and no improper arrest or differential treatment complaints were sustained.

SAC ¶ 17. Plaintiff also points to a recent investigation performed by "N.J. Advanced Media," which provides that "Jersey City police officers were dramatically underreporting incidents of use of force in performing arrest." *Id.* ¶ 18.

Defendants move to dismiss all claims asserted against Jersey City and Officer Kelly for failure to state a claim. *See generally* Def.s' Br., ECF No. 31-1. The matter is now ripe for the Court to decide.

2

## II. LEGAL STANDARD

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading is sufficient so long as it includes "a short and plain statement of the claim showing that the pleader is entitled to relief" and provides the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (internal quotations omitted). In considering a Rule 12(b)(6) motion to dismiss, the court accepts as true all the facts in the complaint and draws all reasonable inferences in favor of the plaintiff. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). Moreover, dismissal is inappropriate even where "it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.*

While this standard places a considerable burden on the defendant seeking dismissal, the facts alleged must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. That is, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* Accordingly, a complaint will survive a motion to dismiss if it provides a sufficient factual basis such that it states a facially plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). In order to determine whether a complaint is sufficient under these standards, the Third Circuit requires a three-part inquiry: (1) the court must first recite the elements that must be pled in order to state a claim; (2) the court must then determine which allegations in the complaint are merely conclusory and therefore need not be given an assumption of truth; and (3) the court must assume the veracity of well-pleaded factual allegations and ascertain whether they plausibly give rise to a right to relief. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010).

3

### III. DISCUSSION

Under *Monell*, a municipality can only be liable for a constitutional violation pursuant to an action based on 42 U.S.C. § 1983 when "the alleged constitutional transgression implements a policy, regulation or decision officially adopted by the governing body or informally adopted by custom." *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Moreover, a plaintiff must demonstrate that "a local government's policy or custom inflicted the injury in question." *Est. of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Monell*, 436 U.S. at 694) (internal brackets and quotation marks omitted)). Here, Plaintiff asserts three claims under *Monell*. Plaintiff alleges claims against Defendants for negligent hiring, failure to train and supervise and unconstitutional official policy. The Court addresses each claim in turn.

#### A. **Negligent Hiring (Count Two)**

Plaintiff alleges that Defendants negligently hired Officer Castro, and as a direct and proximate result of that hiring, Plaintiff's constitutional rights were violated. *See* SAC ¶¶ 31-32. To sustain a negligent hiring claim pursuant to *Monell*, a plaintiff must demonstrate that the municipality was deliberately indifferent in making its hiring decision. *Reed v. Jersey City*, No. CV 21-3921, 2022 WL 1664621, at *6 (D.N.J. May 24, 2022) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 411 (1997)). A municipality acts with deliberate indifference where "adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the . . . consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right." *Brown*, 520 U.S. at 411.

Here, Plaintiff's conclusory allegations that Jersey City was deliberately indifferent to "Castro's history of assaultive behavior and tendencies toward impulsive aggression" are insufficient to establish a negligent hiring claim. SAC ¶¶ 27, 31. Plaintiff neither makes

4

allegations regarding a particular hiring policy or practice used by Defendants, *see Blue v. District of Columbia*, 850 F. Supp. 2d 16, 26 (D.D.C. 2012) (dismissing a claim for negligent hiring where plaintiff failed to identify a hiring policy or practice), nor does the Complaint identify the conduct committed by Defendants that constitutes deliberate indifference in making a decision to hire Officer Castro. *M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist.*, 43 F. Supp. 3d 412, 426 (M.D. Pa. 2014). Accordingly, Plaintiff's negligent hiring claim is dismissed with prejudice.[1]

### B. <u>Failure to Train and Supervise (Count Three)</u>

In Count Three, Plaintiff asserts claims under section 1983 for failure to train and supervise. SAC ¶¶ 33-42. Defendants seek dismissal of the claims, arguing that Plaintiff "does not allege the existence of any established policy, custom, or practice that could form the basis of a municipal liability claim. Nor does plaintiff establish a pattern of similar constitutional violations." Def.s' Br. at 8.

As with other section 1983 municipal liability claims, to bring a section 1983 claim against a municipality for failure to train and supervise its employees, a plaintiff must show that: (1) "'[he] [was] deprived of rights, privileges, or immunities secured by the Constitution and laws,'" and (2) "that the deprivation of those rights was the result of an official government policy or custom." *Mulholland v. Gov't Cnty. of Berks, Pa.*, 706 F.3d 227, 238 (3d Cir. 2013). However, because "the policy concerns a failure to train or supervise municipal employees, liability under section 1983 [also] requires a showing that the failure amounts to deliberate indifference to the rights of persons with whom those employees will come into contact." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (internal quotation marks and citation omitted).

---

[1] The Court notes that Plaintiff appears to have abandoned his negligent hiring claim, as he did not offer any argument in opposition to Defendants' motion to dismiss this claim. Therefore, this claim will be dismissed with prejudice. *See Levy-Tatum v. Navient Sols., Inc.*, 183 F. Supp. 3d 701, 712 (E.D. Pa. 2016) (finding that plaintiff waived those causes of action that defendant moved to dismiss but that plaintiff failed to address).

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (internal quotation marks and citation omitted). Additionally,

> [a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the deliberate indifference— necessary to trigger municipal liability.

*Id.* (internal quotation marks and citation omitted).

To establish a municipality's failure to train or supervise amounts to deliberate indifference, a plaintiff must show that "(1) municipal policymakers know that employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employees mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d Cir. 1999) (citing *Walker v. City of New York*, 974 F.2d 293 at 297-98 (2d Cir. 1992)).

In addition to deliberate indifference, "[t]he failure to train must have a causal nexus with [the plaintiff's] injury." *Thomas*, 749 F.3d at 226 (citation and internal quotation marks omitted). "Liability cannot rest only on a showing that the employees could have been better trained or that additional training was available that would have reduced the overall risk of constitutional injury." *Id.* (citation and internal quotation marks omitted). "Rather, the causation inquiry focuses on whether the injury [could] have been avoided had the employee been trained under a program that was not deficient in the identified respect." *Id.* (citation and internal quotation marks omitted). With these required elements in mind, the court turns to the allegations contained in the SAC.

With respect to Count Three, the SAC contains the following allegations: (1) the Internal Affairs Unit ("Internal Affairs") was charged with the responsibility of investigating allegations

6

of misconduct by its police officers, SAC ¶ 16; (2) between 2013 and 2019, the Internal Affairs received two hundred and six (206) excessive force complaints, fifty-one (51) improper arrests complaints, and forty-nine (49) differential treatment complaints, *id.* ¶ 17; (3) only two (2) excessive force complaints were sustained, and no improper arrest or differential treatment complaints were sustained, *id.*; (4) an investigative report revealed that Jersey City police officers were dramatically underreporting incidence of use of force in performing arrests, *id.* ¶ 18; (5) the Internal Affairs failure to adequately investigate and discipline police officers accused of excessive force, constituted customs and policies which implicitly condones police officers to misuse force on duty by fostering a belief that complaint of illegal use of force would not be properly investigated, *id.* ¶ 22; and (5) the failure to address the foregoing issues through training and supervision constituted deliberate indifference and directly caused the unconstitutional treatment that Plaintiff suffered at the hands of Defendant Castro, *id.* ¶ 38.

Defendants seek to dismiss this claim, contending that: (1) Plaintiff does not specifically identify a municipal custom, practice or policy that caused the underlying incident, Def.s' Reply Br. at 2; (2) Plaintiff does not allege a history of Jersey City failing to discipline off-duty officers who were engaged in criminal misconduct, *id.*; and (3) Plaintiff fails to allege any specific examples of Jersey City failing to investigate complaints of violent misconduct, *id.* at 3.

Construing the facts liberally in favor of Plaintiff, the Court finds that Plaintiff has alleged sufficient facts to state a cause of action for failure to train and supervise against Jersey City. Although Plaintiff cannot point directly to an explicit policy, Plaintiff does allege that Jersey City condoned a custom or practice of inadequately investigating and disciplining police officers accused of excessive force, which, in turn, "guaranteed abusive officers impunity" and directly caused Defendant Castro's unconstitutional misconduct. *See* SAC ¶¶ 22-23. Based on the

7

statistical reports that Plaintiff provided regarding excessive force and police misconduct, it infers that Jersey City policymakers knew that police officers would be confronted with various disputes between citizens both on and off-duty, which could ultimately result in deprivations of constitutional rights. It also infers that Jersey City police officers have a history of mishandling confrontations with citizens. While the Court recognizes Defendants' concern that Plaintiff has not alleged specific facts regarding Jersey City's custom, practice or policy, Plaintiff has alleged enough facts to be entitled to discovery. At the pleading stage, Plaintiff cannot be expected to know all the details regarding Jersey City's policies and customs. *See Carter*, 181 F.3d at 358 ("[the plaintiff] cannot be expected to know, without discovery, exactly what training policies were in place or how they were adopted."). Accordingly, the Court will allow Count Three to proceed against Jersey City.

### C. Unconstitutional Official Policy (Count Four)

In Count Four, Plaintiff asserts a claim under section 1983 for unconstitutional official policy, SAC ¶¶ 40-42, which incorporates all prior allegations of paragraphs 1-28 and repeats the allegations incorporated into Plaintiff's claim for failure to train and supervise. Because this Count is redundant to Count Three and presents no separate factual basis for potential liability, it is a repleading or recasting of the earlier section 1983 claim. Accordingly, Count Four will be dismissed with prejudice.[2]

### D. Claims Against Officer Kelly

In Counts Two and Three, Plaintiff asserts claims against Officer Kelly in his official capacity under section 1983 for negligent hiring and failure to train and supervise. Defendants

---

[2] Similar to Plaintiff's negligent hiring claim, Plaintiff appears to have abandoned his "unconstitutional official policy" claim, as he did not offer any argument in opposition to Defendants' motion to dismiss this claim. Therefore, this claim will be dismissed with prejudice.

seek to dismiss these claims, contending that they should be dismissed as duplicative against Jersey City, Def.s' Br. at 12, to which Plaintiff does not object, Pl.'s Br. at 9. As a district court in this circuit noted, "[a]n official-capacity suit is generally merely another way of pleading an action against an entity of which an officer is an agent." *Rose v. Mahoning Twp.*, No. 3:07CV1305, 2008 WL 918514, at *4 (M.D. Pa. Mar. 31, 2008) (*Kentucky v. Graham*, 473 U.S. 159, 165 (1985). "Such a suit is properly treated as a suit against the entity." *Kentucky*, 473 U.S. at 166. Thus, claims against Officer Kelly in his official capacity will be dismissed with prejudice.

Plaintiff also asserts claims against Officer Kelly in his individual capacity. Defendants argue that these claims should be dismissed because the SAC does not allege that Officer Kelly had any personal involvement in this matter in any way. Def.s' Br. at 12. A supervisor may also be personally liable under section 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations. *Gaymon v. Esposito*, No. CIV.A. 11-4170 JLL, 2013 WL 4446973, at *9 (D.N.J. Aug. 16, 2013); *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988) ("Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."); *see, e.g., Brown v. Grabowski,* 922 F.2d 1097, 1120 (3d Cir. 1990) (reversing denial of summary judgment as to Chief of Police in his individual capacity where "Plaintiff . . . supplied no evidence [that he] . . . directed or affirmatively participated in any of the actions claimed to have deprived Evans of her constitutional rights and, ultimately, her life.").

The Court agrees with Defendants that the SAC does not allege that Officer Kelly was personally involved in Officer Castro's assault against Plaintiff. In other words, the SAC does not allege that Officer Kelly participated in the assault or actually directed the assault that resulted in

the constitutional violation at issue. Moreover, Plaintiff does not allege facts indicating that Officer Kelly adopted a policy or practice which directly caused the constitutional harm. Accordingly, the Court will dismiss the claims asserted against Officer Kelly in his individual capacity without prejudice.

### IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [ECF No. 31] is **GRANTED in part and DENIED in part**. An appropriate Form of Order accompanies this Opinion.

DATED: December 6, 2022

s/ Julien Xavier Neals
**JULIEN XAVIER NEALS**
United States District Judge